*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re HOWE ESTATE.

THOMAS HOWE,

      Appellant,

v

KYLE RIEM, Personal Representative,

      Appellee,

and

STEVEN HOWE,

      Other Party.

UNPUBLISHED
June 06, 2025
3:06 PM

No. 369299
Genesee Probate Court
LC No. 21-216835-DE

Before: YATES, P.J., and YOUNG and WALLACE, JJ.

PER CURIAM.

      For his seventeenth appeal in the last five years, Appellant Thomas Howe (Thomas) is before this Court with challenges to his mother's guardianship, death, estate, and family trusts, and the probate court's handling of those matters.[1] The procedural history is replete with examples of

---

[1] *In re Beverly M. Howe Revocable Trust (In re Howe I)*, unpublished per curiam opinion of the Court of Appeals, issued May 27, 2021 (Docket No. 354458); *In re Beverly Howe Family Trust (In re Howe II)*, unpublished per curiam opinion of the Court of Appeals, issued December 2, 2021 (Docket No. 355094); *In re Wallace Howe Family Trust (In re Howe III)*, unpublished per curiam opinion of the Court of Appeals, issued August 18, 2022 (Docket Nos. 355909, 357016, 357658, 357023, 358509, 358199, 358512); *In re Estate of Beverly M. Howe (In re Howe IV)*, unpublished per curiam opinion of the Court of Appeals, issued March 9, 2023 (Docket Nos. 360090, 360890,

the inability of Thomas and Steven Howe (Steven) to agree on any matter related to their mother's care and estate, and Thomas's penchant for litigating those disputes. As this Court has explained, because Thomas and Steven "disagreed on nearly every aspect of caring for [their mother Beverly] and managing her assets, the probate court appointed an independent guardian and an independent conservator to oversee her care and property. After [her] death, the court appointed Kyle Riem as personal representative of her estate[, while] George Rizik served as trustee of the Beverly Howe Family Trust." *In re Estate of Beverly M. Howe (In re Howe IV)*, unpublished per curiam opinion of the Court of Appeals, issued March 9, 2023 (Docket Nos. 360090, 360890, 360578, 360360, 360891, 361379), p. 3. In this appeal, which Thomas pursues *in propria persona*, he advances at least 27 issues. Thomas's claim of appeal relates to the probate court's December 19, 2023 order, which approved the personal representative's request for fiduciary fees, discharged the personal representative from liability, and closed the estate. Nearly all of Thomas's arguments are far afield from the challenged order of the probate court, but we have considered all of them, and we now affirm.

## I. FACTUAL BACKGROUND

This Court has recounted the procedural history in this matter in four prior opinions. While much of the procedural history is not directly applicable to the claims now before this Court, the context is beneficial. In August 1996, Beverly created the Beverly M. Howe Revocable Trust, and in 2001, Beverly's husband, Wallace Howe, died. Beverly amended and "restated" the Revocable Trust in December 2011, naming herself as trustee, with her son Thomas as the successor trustee, and her other son Steven as the alternate successor trustee. In September 2014, Beverly created the Beverly M. Howe Family Trust and the Wallace Howe Family Trust (collectively "the Family Trusts") through separate trust agreements, which named her sons, Steven and Thomas, as the co-trustees and beneficiaries.

In 2017, Beverly was diagnosed with dementia. In 2018, a guardianship petition was filed, which resulted in the probate court appointing Kraig Sippell as Beverly's guardian. During the guardianship proceedings, the probate court held Thomas in contempt several times for violating various court orders. Petitions were also filed in the probate court concerning the Family Trusts, resulting in Thomas and Steven being removed as trustees, and George F. Rizik, II (Rizik) being appointed to serve as successor trustee of the Family Trusts.

In 2020, Rizik petitioned the probate court to supervise the administration of the Revocable Trust, claiming Beverly was not capable of acting as trustee of the Revocable Trust, and requesting that the probate court order the administration of the Revocable Trust be supervised, that Beverly be removed as trustee, and that Sippell be appointed as the substitute or successor trustee. Thomas opposed that petition, asserting that Rizik lacked standing, and that the petition was moot because of the 2014 amendment to the Revocable Trust agreement, which he said established that Beverly, Thomas, and Steven were all co-trustees. Rizik contended that Beverly had a life-estate interest in real property that could be terminated by the trustee of the Revocable Trust, the property should be sold, and the proceeds should be used to provide for Beverly's care. Rizik also claimed that he

360578, 360360, 360891, 361379); *In re Beverly M. Howe Revocable Trust (In re Howe V)*, unpublished order of the Court of Appeals, entered December 18, 2024 (Docket No. 368786).

was bound to transfer the assets in the Family Trusts to the Revocable Trust upon Beverly's death. Thomas strenuously opposed the petition, but Steven agreed that the petition should be granted. The probate court appointed Sippell as trustee of the Revocable Trust because Thomas and Steven were unable to act as co-trustees given their dysfunctional past behavior. Thomas appealed to this Court, challenging Rizik's standing as well as Sippell's appointment, and this Court remanded the matter to the probate court for further explanation of its rationale for appointing Sippell, but this Court otherwise found Thomas's arguments lacking merit. *In re Beverly M. Howe Revocable Trust (In re Howe I)*, unpublished per curiam opinion of the Court of Appeals, issued May 27, 2021 (Docket No. 354458), p. 8. On remand, the probate court "issued findings of fact and reappointed Sippell as trustee of Beverly's revocable trust, *nunc pro tunc*." *In re Wallace Howe Family Trust (In re Howe III)*, unpublished per curiam opinion of the Court of Appeals, issued August 18, 2022 (Docket Nos. 355909, 357016, 357658, 357023, 358509, 358199, 358512), p. 3.

Also, in May 2020, Rizik petitioned for approval of his final account, requested that he be discharged as successor trustee of the Family Trusts, and requested attorney fees and costs totaling $6,848.92. Thomas contested those disbursements, challenged Rizik's supporting documentation, and objected to his hourly attorney-fee rate. The probate court accepted Rizik's final accounting, and ordered that any remaining assets be released to Sippell. The probate court discharged Rizik as fiduciary, and closed the file. Thomas appealed to this Court, asserting that the disbursements from the Family Trusts were improper and should not be used for Beverly's care since she was not a beneficiary of the Family Trusts, and that the fees charged by the successor trustee were improper and unreasonable. This Court remanded the matter to the probate court to make factual findings in response to Thomas's challenges to the fees at issue, but otherwise rejected Thomas's arguments. *In re Beverly Howe Family Trust (In re Howe II)*, unpublished per curiam opinion of the Court of Appeals, issued December 2, 2021 (Docket No. 355094), p. 2-5.

Later in 2020, Sippell petitioned the probate court for attorney fees. Thomas objected, but the probate court granted the petition. Additionally, Thomas moved for immediate distribution of the revocable trust's assets, which the probate court denied. Thomas again appealed to this Court, and the matter was remanded to the probate court to reevaluate Sippell's attorney fees concerning the family trust, and to address Thomas's objections to Sippell's fees for Beverly's guardianship, but this Court rejected Thomas's other arguments as meritless. *In re Howe III*, unpub op at 2-22.

In March 2021, Beverly Howe died at 93 years of age, and the cause of death listed on her death certificate was natural causes. Beverly had executed a will in December 2011 that appointed Thomas as personal representative, with Steven as successor personal representative. However, a codicil to that will was entered in September 2014 appointing both Steven and Thomas as trustees of Beverly's trust. The codicil also made them co-personal representatives.

The day after Beverly died, Thomas petitioned the probate court to appoint him as personal representative, asserting that a special personal representative was necessary because the brothers could not agree about the disposition of Beverly's remains. Steven filed a competing petition and emergency petition, insisting that Thomas had "an unlimited appetite for litigation" for the purpose of controlling Beverly's assets for his own benefit. Furthermore, Steven alleged that Thomas was requiring an autopsy of Beverly "for the sole purpose of fishing for something he will not find to use in future wrongful death litigation" against everyone who had provided Beverly medical care. Steven noted the dispute over an autopsy was preventing Beverly's remains from being embalmed

or buried according to her wishes. But "Thomas claimed—and continues to claim—that a potential medical-malpractice claim against Beverly's healthcare providers is a potentially substantial asset of the estate." *In re Howe IV*, unpub op at 3. Steven requested that the probate court preclude an autopsy, issue a restraining order against Thomas and his family for the purpose of preventing any disruptions at the memorial services, and give Steven the authority over the burial or disposition of Beverly's remains. Riem was appointed by the probate court to act as special representative for the purposes of Beverly's burial, disposition, and autopsy, and the probate court entered a mutual restraining order against the brothers for the purpose of Beverly's memorials and burial.

Riem, as the estate's personal representative:

> cooperated with Thomas's requests for an autopsy and production of Beverly's medical records. Riem also consulted Beverly's long-time family physician, Dr. Saed J. Sahouri, M.D., who reviewed the autopsy report and medical records, but found no cause to further investigate a claim for medical malpractice. Because Thomas was adamant that a medical-malpractice claim should still be investigated, the probate court ordered Thomas to pay $5,000 toward an investigation and appointed Michael Behm, a malpractice attorney, to investigate a potential malpractice claim. The order provided, however, that Thomas was to be reimbursed from any recovery if a claim was found to be meritorious. [*In re Howe IV*, unpub op at 3-4.]

Thomas declined to pay the $5,000.00, so Riem provided notice of the estate's intent to abandon the medical-malpractice and wrongful-death claims, and to proceed with closing the estate. Riem petitioned the probate court to approve the abandonment of the medical-malpractice and wrongful-death claims, which the court denied. Thomas petitioned the probate court to compel Riem to sign authorizations to obtain more of Beverly's medical, nursing-home, and pharmaceutical records, which the court denied.

> Riem petitioned to resign as personal representative, and Thomas petitioned for his own appointment as personal representative. The probate court denied both petitions. Because most of Beverly's assets were held by her trusts, the probate estate consisted mostly of a small bank account and some checks, totaling approximately $5,800, and the contents of a safe-deposit box. Beverly's will recommended a procedure for dividing items of personal property between Thomas and Steven if they could not agree. But because the probate court became concerned that the estate did not have sufficient liquid assets to pay Riem's fees, it authorized Riem to sell items in Beverly's safe-deposit box, but provided that Thomas or Steven would have the first opportunity to purchase any item that was sold. . . .

> Thomas moved to disqualify the Probate Court Judge, Jennie E. Barkey. The judge denied the motion, but did not refer the matter to the chief judge for de novo review. Thomas also moved for a stay of all proceedings. The probate court partially granted the stay, applying it only toward investigation of the malpractice action. . . .

-4-

Thomas also filed an action against the estate in circuit court, seeking recovery of $31,173.19 for attendant care and household services he provided to Beverly before her death. The circuit court transferred the case to the probate court and ordered that it be assigned to Judge Barkey, who had been assigned to the probate case. Riem, in his capacity as personal representative, moved for imposition of a security bond against respondent for litigation costs. The probate court granted the motion. [*In re Howe IV*, unpub op at 4.]

Thomas again appealed to this Court, and the matter was remanded to the probate court to evaluate Thomas's objections to Riem's fees, and for an evaluation by the chief judge of Thomas's motion to disqualify the probate judge, but this Court affirmed the probate-court order in all other respects. *Id*. at 4-24. The chief judge of the probate court ultimately reviewed and denied Thomas's motion to disqualify the probate judge, and the probate court found that Riem's fees were reasonable.

Riem petitioned the probate court for approval of payment of fiduciary fees and for closure of the estate. At the time of that petition, the estate had $7,808.48 in funds, and Riem's fees totaled $12,674.55. Thomas filed objections.

In 2023, Thomas filed yet another claim of appeal, which this Court dismissed for lack of jurisdiction because Thomas's appeal concerned earlier orders of the probate court, not the latest orders from the probate court, which would have been limited to "a review of the specific accounts, fees, and costs allowed by the final orders appealed from . . . ." *In re Beverly M. Howe Revocable Trust (In re Howe V)*, unpublished order of the Court of Appeals, entered December 18, 2024 (Docket No. 368786).

On December 19, 2023, the probate court approved the fees and ordered that the estate's funds be released in partial satisfaction of the fees. The court further ordered that Riem was discharged from liability as personal representative, and that the administration of the estate was closed. This appeal follows.

## II. LEGAL ANALYSIS

On appeal, Thomas's rambling and incoherent brief offers 27 arguments, while repeatedly referring to the probate court and Riem as "usurpers," accusing the lower court of treason, referring to the probate court as "an artificial person," and accusing the probate judge of human trafficking, corruption, embezzlement, kidnapping, and collusion. Setting aside those baseless and distasteful accusations as unsupported by the record or any cogent argument, we will address the substance of Thomas's arguments.

Thomas's arguments are as follows: (1) the probate court did not have jurisdiction in this matter; (2) whether the probate court admitted it lacked jurisdiction or delegated its authority; (3) the probate court lacked jurisdiction under the Michigan Constitution; (4) MCL 600.841 somehow violates the "privileges or immunities" clause of the Fourteenth Amendment of the United States Constitution; (5) the probate court violated its oath of office by failing to follow "all United States Supreme Court decisions" which "includ[e] Norton v. Shelby County 1886"; (6) the probate court "changed the estate plan of Beverly M. Howe" by appointing Riem "to protect" the probate court's "corrupt participates [sic] wrongdoings" and improperly denied Thomas's appointment as personal

-5-

representative; (7) the probate court and Riem "conspired to fraudulently conceal the medical documentation of Beverly Howe" to prevent Thomas from investigating the wrongful death of his mother Beverly; (8) the probate court, Steven, and Riem "conspired to devise a scheme through trickery" concerning the Michigan Wrongful Death Act to prevent Thomas's investigation into Beverly's death; (9) the probate court acted to deprive Thomas of his right to be appointed as the personal representative of Beverly's estate to embezzle and protect "corrupt participants"; (10) the probate court and Riem conspired "to threaten, intimidate, and deprive Thomas" of "his right to the appointment" as personal representative of Beverly's estate; (11) the probate court somehow "conspired through false and fictitious statements to intimidate and threaten Thomas and deny him appointment" as the personal representative of Beverly's estate; (12) the probate court and Riem "conspired to devise a scheme to fraudulently obtain property by fraudulent representations" and deprive Thomas of the assets in Beverly's revocable trust; (13) Riem embezzled assets in Beverly's safe-deposit box by compelling Thomas to pay Riem $1,600.01 to recover the property; (14) the probate court and Riem conspired to embezzle and conceal that Riem embezzled $8,186.50 from Beverly's revocable trust "in violation of the First Amendment Spendthrift provision"; (15) the probate court and Riem conspired "to defraud the estate" "by failing to recover the real property" that "was fraudulently sold on 3/9/2021," the proceeds from which "were embezzled to pay the predator corrupt participants"; (16) the probate court committed theft of Beverly's trust by ordering that the estate's personal property be sold to satisfy Riem's fees related to Thomas's investigation of alleged medical malpractice or that Thomas pay those fees himself; (17) the probate court and Riem conspired to commit theft of property in the trusts and were unjustly enriched; (18) Riem colluded with Sippell to fraudulently obtain money from the trusts by preparing the estate's tax returns and pay its bills; (19) the probate court and Riem conspired to intimidate and threaten Thomas to obtain money from Thomas for the purpose of pursuing Thomas's medical malpractice investigation; (20) the probate court and Riem conspired to intimidate and threaten Thomas to obtain a $20,000 security bond from Thomas to pay Riem through the court's March 17, 2022 order; (21) Riem did not act in the estate's best interests as the personal representative, so his fees should be returned; (22) the probate court might be a foreign agent and Thomas should be provided with the court's foreign agent registration statement, "per the Foreign Agents Registration Act of 1938"; (23) Riem might be a foreign agent and Thomas should be provided with his foreign agent registration statement, "per the Foreign Agents Registration Act of 1938"; (24) the judges of this Court who have been involved in Thomas's claims of appeal might be foreign agents and Thomas should be provided with the foreign agent registration statement for each of them, "per the Foreign Agents Registration Act of 1938"; (25) the probate court delegated its authority; (26) whether the probate court had a contract with Thomas; (27) Beverly's estate should remain open and Thomas should be appointed personal representative to recover "the embezzled real property" and for the investigation into Beverly's "wrongful death."

As an initial matter, the trial-court order from which Thomas appeals merely approved the personal representative's request for fiduciary fees, discharged the personal representative from liability, and closed the estate. MCR 5.801(A) confines an appeal of right from a probate court to certain orders; all other orders from a probate court are appealable only by leave. MCR 5.801(B). Many of Thomas's assertions on appeal to this Court drift far afield from the probate court's order he is appealing from and the limitations imposed by MCR 5.801(A), so they are not properly before this Court. And claims concerning earlier orders of the probate court, rather than the order from which Thomas appeals, are beyond this Court's jurisdiction now. *Surman v Surman*, 277 Mich

App 293, 294; 745 NW2d 802 (2007); *Nowland v Rice's Estate*, 138 Mich 146, 148; 101 NW 214 (1904).

We will now address Thomas's 27 arguments, even though no claim advanced by Thomas is supported by a citation to applicable law—let alone bolstered by a coherent argument—so they are subject to being deemed abandoned. See *In re Temple Marital Trust*, 278 Mich App 122, 139; 748 NW2d 265 (2008) ("An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims."), and *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999) ("And, where a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned.").

### A. PROBATE-COURT JURISDICTION

Thomas's first three arguments pertain to the probate court's jurisdiction. We note that, on numerous occasions in this matter, Thomas petitioned the probate court, and thus availed himself of its jurisdiction without objection. Moreover, Thomas has already challenged the probate court's jurisdiction in a prior appeal, which this Court has addressed and resolved. Beyond that, Thomas's jurisdictional arguments continue to be meritless. See *In re Howe, III*, unpub op at 15, *In re Howe IV*, unpub op at 9-16.

### B. CONSTITUTIONALITY OF MCL 600.841

Thomas asserts that MCL 600.841 runs afoul of the privileges or immunities clause of the Fourteenth Amendment of the United States Constitution, but he offers no argument for that claim. "An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims." *In re Temple Marital Trust*, 278 Mich App at 139. "And, where a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Prince*, 237 Mich App at 197. Hence, we deem Thomas's constitutional challenge abandoned.

### C. PROBATE COURT AND STARE DECISIS

Thomas contends that the probate court violated its oath of office by failing to follow "all United States Supreme Court decisions" "including Norton v. Shelby County 1886." Presumably, Thomas is referring to *Norton v Shelby Co*, 118 US 425; 6 S Ct 1121; 30 L Ed 178 (1886), which held that the United States Supreme Court will follow the decisions of the highest court of a state in matters construing the constitution and laws of that state, unless they conflict with a principle of the United States Constitution. Thomas does not support his assertion that *Norton* is applicable, nor does he support his claim that the probate court violated its oath of office. "An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims." *In re Temple Marital Trust*, 278 Mich App at 139. "[W]here a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Prince*, 237 Mich App at 197. Therefore, we consider Thomas's assertions in this regard abandoned.

Thomas argues that, pursuant to *Norton*, the probate court does "not have any jurisdiction in trust, estate, and adult guardianship matters," and is operating in violation of the United States and Michigan Constitutions. Thomas has already challenged the probate court's jurisdiction in a

prior appeal, which this Court addressed and resolved. Thomas's arguments in this regard continue to be meritless. See *In re Howe, III*, unpub op at 15, *In re Howe IV*, unpub op at 9-16.

### D. INVESTIGATION OF BEVERLY'S DEATH

Thomas states in his seventh, eighth, nineteenth, and twenty-seventh arguments that he was somehow prohibited from investigating his mother's death, and was "schemed" into having money taken from his mother's estate to pay for an investigation into her cause of death, but we disagree. As this Court has previously explained, Riem, as the estate's personal representative:

> cooperated with Thomas's requests for an autopsy and production of Beverly's medical records. Riem also consulted Beverly's long-time family physician, Dr. Saed J. Sahouri, M.D., who reviewed the autopsy report and medical records, but found no cause to further investigate a claim for medical malpractice. Because Thomas was adamant that a medical-malpractice claim should still be investigated, the probate court ordered Thomas to pay $5,000 toward an investigation and appointed Michael Behm, a malpractice attorney, to investigate a potential malpractice claim. The order provided, however, that Thomas was to be reimbursed from any recovery if a claim was found to be meritorious.

> \* \* \*

> The probate court's decision requiring Thomas to pay the expense of further investigating a medical-malpractice claim, subject to being reimbursed from any wrongful death recovery if a claim was found to be meritorious, was a reasonable approach for balancing the parties' competing interests. Riem had already obtained an autopsy at Thomas's request and consulted Beverly's long-time family doctor, who concluded that there was no factual basis for pursuing a malpractice claim. This investigation reasonably supported Riem's belief that a medical-malpractice action was not warranted and would not be beneficial to the estate. Steven, the estate's other beneficiary, also opposed pursuing a medical-malpractice claim. Although Thomas began to acquire medical records, he had yet to come forward with any evidence supporting the elements of a medical-malpractice claim. . . . Under these circumstances, the probate court's decision reasonably allowed Thomas to pursue the claim, but without risking further financial loss to the estate, especially considering there was a factual basis that pursuing a medical-malpractice claim was not in the estate's interests. It was not unreasonable to require Thomas to bear the expense of further investigation, subject to being reimbursed by any recovery if a viable claim came to fruition. Because the court's decision was reasonable, the court did not abuse its discretion.

> Thomas's additional arguments against the probate court's choice of Behm as an attorney to investigate any malpractice claim are not supported by the record. Behm was a reasonable choice because he was a malpractice attorney. Thomas argues that Behm had a conflict of interest because his spouse is a Genesee Circuit Court judge. Thomas also suggests that Behm's appointment somehow benefited the probate court judge. An attorney is not permitted to "represent a client if the

representation of that client will be directly adverse to another client." MRPC 1.7(a). An attorney also may not represent a client "if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests." MRPC 1.7(b). Thomas merely speculates that the probate court's appointment of Behm somehow served the court's interests because Behm's spouse was a circuit court judge. Thomas fails to adequately explain how the fact that Behm was married to a different judge on the same court either served the probate court's interests or created a conflict of interest where there was no allegation that Behm's spouse had any involvement in this or the related cases. Accordingly, Thomas has failed to establish any plain error affecting his substantial rights with respect to Behm's appointment. [*In re Howe IV*, unpub op at 3-4, 7.]

Contrary to Thomas's arguments, the record and our prior opinion in this matter reflect that, despite several consultants concluding there was no factual basis for pursuing a malpractice claim, Thomas was still indulged and permitted to investigate the matter. His dissatisfaction with the results does not mean that his efforts were frustrated, or that a scheme was concocted to siphon money from Beverly's estate. Instead, the record reflects that Thomas has been the single largest contributor to the depletion of the assets of the estate. Further, his argument in this regard is barred by MCR 5.801(A). See also *Surman*, 277 Mich App at 294.

### E. PERSONAL REPRESENTATIVE OF BEVERLY'S ESTATE

Thomas's sixth, ninth, tenth, eleventh, and twenty-seventh arguments state dissatisfaction that a third party, as opposed to Thomas, was appointed by the probate court to act as the personal representative of Beverly's estate. However, that matter has already been addressed and resolved by this Court. Also, Thomas's arguments in this regard continue to be meritless. *In re Howe IV*, unpub op at 4-6. Further, his argument is barred by MCR 5.801(A). See *Surman*, 277 Mich App at 294. To the extent Thomas accuses the probate court of engaging in a conspiracy or otherwise threatening or intimidating him on this issue, his assertions are both wholly unsupported by the record and devoid of merit.

### F. PAYMENT OUT OF BEVERLY'S ESTATE AND TRUSTS

Thomas's twelfth through eighteenth, and twenty-seventh, arguments involve his objection that Beverly's estate and trusts were used to pay for attorney fees, compensation to the personal representative, and other expenses, thereby depriving Thomas of his ability to receive those assets. He further complains that Beverly's property was improperly sold to cover those costs. This Court has already addressed the matter regarding Riem's compensation, stating:

Thomas does not challenge the fact that the probate court ordered Riem's compensation. Rather, he asserts that the source of payment—from the sale of Beverly's personal items—contradicted the terms of Beverly's will. In Thomas's view, the only appropriate disposition of Beverly's personal property was distribution by lot and, by ordering the sale of Beverly's personal items to cover the costs of Riem's compensation, the probate court violated the terms of the will. [*In re Howe IV*, unpub op at 8.]

This Court noted that:

> payment for services was referenced in another section of Beverly's will which stated: "All debts, expenses, and taxes imposed by reason of my death upon any transfer of property . . . shall be paid by my personal representative from the residual of my estate without apportionment unless voluntarily paid by some other party"
>
> Riem's compensation was an expense arising from Beverly's death, and it was appropriate for the probate court to order the sale of some personal property to pay this expense. To the extent that the funds paid for any item exceeded Riem's fees and other administration expenses, Thomas and Steven would receive the balance as their share of the estate as directed by the distribution section of Beverly's will. Thomas has failed to establish that the probate court erred when it authorized Riem to sell personal property pursuant to this method. [*Id*. at 8.]

This Court has previously addressed and resolved most of Thomas's arguments in this regard, and the arguments continue to lack merit. To the extent that Thomas now raises additional challenges, many are precluded by MCR 5.801(A) because they relate to earlier probate-court orders that are not subject to review on this appeal. See also *Surman*, 277 Mich App at 294. To the extent that Thomas's challenges relate to the final order of the probate court, Thomas's assertions are not supported by the record, they lack applicable citations to the law, and they are not supported by a cogent argument. "An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims." *In re Temple Marital Trust*, 278 Mich App at 139. "And, where a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Prince*, 237 Mich App at 197. Therefore, we consider Thomas's assertions in this regard abandoned.

## G. THE PROBATE COURT'S MARCH 17, 2022 ORDER

Thomas asserts that the order issued by the probate court on March 17, 2022, was designed to "intimidate and threaten" him by "requiring Thomas to post a Security Bond on [sic] the amount of $20,000.00 to pay" Riem. That order concerned the following subjects: Thomas's motion to disqualify the probate judge; Thomas's motion to stay proceedings; Riem's petition for an order approving abandonment of Thomas's medical-malpractice claims; Thomas's petitions for orders compelling additional production of Beverly's medical records; and Thomas's petition to restrain Riem from acting as personal representative until this Court addressed one of his claims of appeal. Riem had petitioned the probate court to enter an order approving the abandonment of Thomas's medical malpractice claim and investigation after Thomas failed to deposit $5,000.00 with Riem, as required by the probate court's January 10, 2022 order. The record does not contain any order by the probate court directing Thomas to pay $20,000.00 to Riem. "An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims." *In re Temple Marital Trust*, 278 Mich App at 139. "And, where a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Prince*, 237 Mich App at 197. Further, Thomas's claim is precluded by MCR 5.801(A) as it relates to an earlier order by the probate court not subject to this appeal. See also *Surman*, 277 Mich App at 294. As a result, we deem Thomas's assertion in this regard abandoned and contrary to the record.

## H. RIEM'S PERFORMANCE AND FEES

In Thomas's twenty-first claim, he insists Riem did not act in the best interests of the estate or the beneficiaries, so Riem's fees must be returned. Thomas does not support this assertion either factually or legally. "An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims." *In re Temple Marital Trust*, 278 Mich App at 139. "And, where a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Prince*, 237 Mich App at 197. Therefore, we consider Thomas's assertion in this regard abandoned.

## I. FOREIGN AGENTS

Thomas asserts in three separate claims that the probate court, Riem, and the judges on this Court are foreign agents who should provide him with a foreign agent registration statement under the Foreign Agents Registration Act of 1938 (FARA), 22 USC § 611, *et seq.* There is nothing to substantiate Thomas's assertion that anyone involved in this case is a foreign agent. Thomas fails to establish the applicability of FARA in this matter. Furthermore, this is an appellate proceeding in which discovery is not permitted. Thomas is not entitled to request the production of documents in an argument in an appellate brief. "An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims." *In re Temple Marital Trust*, 278 Mich App at 139. "[W]here a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Prince*, 237 Mich App at 197. Further, Thomas's claims are precluded by MCR 5.801(A) as they do not relate to the order entered by the probate court that is subject to this appeal. See also *Surman*, 277 Mich App at 294. Thus, we consider Thomas's assertions in this regard abandoned.

## J. PROBATE COURT'S DELEGATION OF AUTHORITY

Thomas claims that the probate court delegated its authority, but fails to articulate how that happened or why such a delegation was impermissible. Thomas also asserts that the probate court was not delegated the authority to issue many of its orders, but Thomas provides no factual or legal basis to support his claim. "An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims." *In re Temple Marital Trust*, 278 Mich App at 139. "And, where a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Prince*, 237 Mich App at 197. Further, Thomas's claim is precluded by MCR 5.801(A) because it does not relate to the order entered by the probate court that is subject to this appeal. See also *Surman*, 277 Mich App at 294. Therefore, we consider Thomas's assertion in this regard abandoned.

## K. CONTRACTUAL RELATIONSHIP BETWEEN THE PROBATE COURT AND THOMAS

In Thomas's statement of the questions presented in his brief, he suggests that a contractual relationship existed between the probate court and himself, but he does not offer any argument on the matter or any citation to record evidence. "An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims." *In re Temple Marital Trust*, 278 Mich App at 139. "And, where a party fails to cite any supporting legal

authority for its position, the issue is deemed abandoned." *Prince*, 237 Mich App at 197. Thus, we consider Thomas's assertion in this regard abandoned.

## L. CLOSING OF THE ESTATE

Thomas's final claim, in part, challenges the closing of Beverly's estate. The remainder of the issues described in his final claim have already been addressed and resolved in this opinion. Thomas's argument in this regard amounts to a mere disagreement with the probate court, a desire to continue investigating his mother's death, and a presumed desire to recover some of the property that was sold. Thomas otherwise offers no factual or legal support for his assertion that the closure of Beverly's estate was improper in any manner. "An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims." *In re Temple Marital Trust*, 278 Mich App at 139. "And, where a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Prince*, 237 Mich App at 197. Therefore, we consider Thomas's assertion in this regard abandoned.

Affirmed.

/s/ Christopher P. Yates
/s/ Adrienne N. Young
/s/ Randy J. Wallace

-12-